**850**

**William G. MASSENGILL,**
**Claimant–Appellant,**

v.

**OZARK ACTION, INC.,**
**Employer–Respondent.**

No. 15777.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 5, 1989.

John E. Price, Woolsey, Fisher, Whiteaker & McDonald, Springfield, Don M. Henry, Henry & Henry, P.C., West Plains, for claimant-appellant.

George R. Wilhoit, Jr., Hyde, Purcell, Wilhoit, Spain, Edmundson & Merrell, Poplar Bluff, for employer-respondent.

FLANIGAN, Presiding Judge.

Claimant-appellant William G. Massengill filed a claim under The Workers' Compensation Law against employer-respondent Ozark Action, Inc., and its insurer, seeking benefits for injuries arising out of an accident which occurred on January 30, 1985, in Howell County. The Labor and Industrial Relations Commission entered a final award affirming a prior award of the Administrative Law Judge, who had awarded benefits based upon a permanent partial disability rating of 50 percent of the body as a whole. As authorized by § 287.495 RSMo 1986, claimant appeals to this court from the final award of the commission.

Claimant's sole point is that the commission's award is not supported by sufficient competent evidence "because the claimant's testimony and the medical testimony established that claimant had permanent and progressive conditions which prevented him performing any dignified employment for which claimant had any education or training, in that claimant cannot sit or stand for prolonged periods of time, cannot drive an automobile for prolonged periods of time, and cannot perform tasks requiring fine hand coordination or motor skills. The evidence further showed that claimant's condition is deteriorating, consistent with his injury, and that there is no medical treatment possible to alleviate claimant's conditions. The overwhelming weight of the evidence thus shows that claimant is totally and permanently disabled."

The standards governing appellate review of the commission's award are set forth in *Hutchinson v. Tri–State Motor Transit Co.*, 721 S.W.2d 158, 161–162[1–4] (Mo.App.1986). It is not necessary to restate those standards here, but this court must adhere to them.

On January 30, 1985, claimant, during the course of his employment, sustained a fall from a ladder while he was in the process of hanging windows during a freezing rain. His left arm and hand struck the ground. Although he felt pain in his left shoulder, he did not seek medical

attention immediately. He continued to work until February 21, 1985, when he placed himself under the care of Bert E. Park, M.D., a neurosurgeon. On February 22, 1985, Dr. Park performed an anterior cervical microdiskectomy "without a fusion."

Initially the claimant's post-operative course was "very good" according to Dr. Park, but in July claimant was again hospitalized because of persistent difficulty in walking. On July 17, 1985, Dr. Park performed a posterior cervical laminectomy and claimant was discharged from the hospital a week later. Dr. Park treated claimant as an outpatient. On February 10, 1986, Dr. Park again examined him. On that date, so Dr. Park testified, claimant was "doing well and having no pain" but was still having some difficulty with his walking, "feeling unsteady on his feet." Dr. Park testified that in his opinion the claimant had a permanent partial disability rating of "15 percent of the whole man," based upon the injuries which he observed.

Charles Ash, M.D., an orthopedic surgeon, at the request of the employer, made a comprehensive examination of the claimant on April 25, 1986, and again on June 25, 1987. In the opinion of Dr. Ash, the claimant had a permanent partial disability rating of "50 percent of the body as a whole."

Both Dr. Park and Dr. Ash testified that claimant was able to work and that there were jobs he could do. Dr. Park was of the opinion that there would be risk involved in any job "that depended upon climbing" which was "dependent primarily upon his legs." Dr. Park considered that factor in reaching his disability rating.

On October 17, 1986, the claimant, at the instance of his attorney, was seen by Garth Russell, M.D., an orthopedic surgeon, who also conducted a comprehensive physical examination of the claimant. Dr. Russell testified that in his opinion the claimant was totally and permanently disabled.

The work history of the claimant prior to the accident included work as a bartender, a car salesman, a life insurance salesman, an assembly line worker for an automobile manufacturer, and a clerk for a finance company. He admitted that since the accident he had done some carpentry work. He also had done some painting for which, he said, "my wife has received pay."

At the hearing before the Administrative Law Judge on October 28, 1987, claimant admitted that since the accident and the surgeries he had "piddled here and there ... around the shop." He admitted that he had helped a friend put up some paneling in a bathroom and had done "some odd jobs or part-time jobs for other people since the accident." He admitted that he drew unemployment compensation for three months in 1986, and "drew all that I was eligible to draw." He testified that he knew "that to qualify for unemployment benefits you have to be physically able to work."

A major, and perhaps the principal, complaint of the claimant was that he experienced difficulty in walking. There was testimony by Gary Burks and Patrick Planer, both employees of claimant's employer, that on September 4, 1987, they had observed claimant walking at a lounge. Burks characterized claimant's walk "as a normal walk." Planer said he saw "nothing unnatural about [the claimant's] gait or the way he walked." Planer also said, "I was acquainted with the way he walked prior to his injury."

Conflicts in the evidence and the credibility of witnesses are matters for resolution by the commission. Although the claimant presented testimony which, if it had been accepted by the commission, would have supported a more favorable award, the commission was not compelled to believe that testimony and was at liberty to reject all or any part of it which it did not consider credible.

This court concludes that the award of the commission is supported by competent and substantial evidence on the whole record and that the findings of the commission are not clearly contrary to the over-

whelming weight of the evidence. See *Mattera v. Tarlton,* 743 S.W.2d 887 (Mo. App.1987).

The judgment is affirmed.

MAUS and PREWITT, JJ., concur.