Jack GORDON, Employee–Respondent,

v.

TRI–STATE MOTOR TRANSIT CO., Employer–Respondent,

and

Missouri State Treasurer, Custodian of the Second Injury Fund, Appellant.

No. 20086.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 13, 1995.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cara Lee Harris, Asst. Atty. Gen., Jefferson City, for appellant.

Jerry Kenter, John B. Boyd, Connaughton, Boyd & Kenter, P.C., Kansas City, for employee-respondent.

Ronald G. Sparlin, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for employer-respondent.

GARRISON, Judge.

This is a workers' compensation case in which the Missouri State Treasurer (Appellant), as custodian of the Second Injury Fund (SIF), appeals from a final award of the Labor and Industrial Relations Commission (Commission). The Commission affirmed an earlier award by the Administrative Law Judge (ALJ) determining that Respondent Jack Gordon (Employee) was entitled to receive permanent total disability benefits from the SIF.

The injury which is the subject of the instant claim occurred on January 20, 1987, when Employee, who was a truck driver for Respondent Tri–State Motor Transit Co. (Employer), fell on ice while hooking onto a trailer in preparation for an over-the-road trip. He apparently sustained an injury to his back as a result of that fall and had not returned to work as of the time this claim was heard by the ALJ on May 27, 1993.

Employee had been injured prior to the injury which was the basis of this claim. In 1975 he injured his shoulder and neck when his truck was rear-ended; in 1977 his lower back was injured when he fell off a porch; and in 1979 he was run over by a truck on which he was working and received a broken jaw, crushed right shoulder, broken right arm and chipped right elbow. All of the medical testimony indicated that Employee had a pre-existing permanent partial disability as a result of those injuries.

The medical testimony in the instant case consisted of the testimony of one doctor whose opinion was that Employee sustained a permanent partial disability as a result of this fall rated as 15–20% of the body as a whole which, together with the effects of his previous injuries, left him with a permanent partial disability rating of 80–85% of the body as a whole. Another doctor testified that the injuries sustained in the 1987 fall resulted in a permanent partial disability rating of 15% of the body as a whole, his previous injuries had resulted in a permanent partial disability rating of 53½ of the body as a whole, that the combined effects of those injuries resulted in an additional disability of 6½, and that as a result of all the injuries, he had a permanent partial disability rating of 75% of the body as a whole.

The ALJ found that the Employee had industrially disabling injuries prior to the January, 1987 fall, and that the injuries sustained in that fall, when combined with the effects of the prior injuries, resulted in a permanent total disability. He held that the Employer was responsible for 15% permanent partial disability of the body as a whole as a result of the January, 1987 injuries, and that the SIF was responsible for permanent total disability benefits.

Appellant sought review by the Commission of the ALJ's findings and award. The Commission, with one member dissenting, affirmed the ALJ's award after finding that it was supported by competent and substantial evidence. Appellant then filed the instant appeal.

Appellant's sole point relied on is:

The Administrative Law Judge erred in awarding Employee permanent total dis-

ability benefits because Employee failed to prove he was permanently and totally disabled from employment in the open labor market in that all evidence found Employee capable of working.

Rule 84.04(d)[1] requires that a point relied on in an appellant's brief "shall state ... what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...." The only issues for consideration on any appeal are those presented in the "points relied on" section of appellant's brief, and questions not there presented are considered abandoned. *Skinner v. Dawson Metal Products,* 575 S.W.2d 935, 938 (Mo.App.S.D.1978). In the instant case, the only action or ruling sought to be reviewed by Appellant is the action of the ALJ.

 The Commission reviews the record and, when appropriate, determines the credibility of the witnesses and the weight to be given their testimony, resolves any conflicts in the evidence, and reaches its own conclusions independently of the referee's findings. *Tillman v. Wedge Mobile Serv. Station,* 565 S.W.2d 653, 658 (Mo.App.E.D.1978). After the Commission has determined an award in a workers' compensation case, the appellate court reviews the Commission's award, not the findings of the ALJ. *Bell v. Arthur's Fashions, Inc.,* 858 S.W.2d 760, 762 (Mo.App. E.D.1993); *Johnson v. City of Kirksville,* 855 S.W.2d 396, 398 (Mo.App.W.D.1993); *Gudde v. Heiman Grain, Inc.,* 830 S.W.2d 574, 575 (Mo.App.W.D.1992); *Hatter v. Cleaning Service Co.,* 814 S.W.2d 951, 955 (Mo.App.W.D. 1991); *Jones v. Jefferson City School Dist.,* 801 S.W.2d 486, 489 (Mo.App.W.D.1990); *Petrovich v. Orscheln Bros. Truck Lines,* 607 S.W.2d 832, 834 (Mo.App.W.D.1980); *Skinner v. Dawson Metal Products,* 575 S.W.2d at 938. Accordingly, the ruling identified in Appellant's point relied on is not one which we have authority to review.

We are permitted, however, to review the argument portion of the brief to determine whether there has been plain error affecting substantial rights which, though not properly preserved, may have resulted in a manifest injustice or a miscarriage of justice. *Sertoma Bldg. Corp. v. Johnson,* 857 S.W.2d 858, 859 (Mo.App.S.D.1993); Rule 84.13(c). We choose to do so in the instant case. It is apparent from the argument section of Appellant's brief that its complaint is with the finding of the Commission which affirmed the ALJ's award.

 In reviewing the finding of the Commission, we are mindful of the standard of review in workers' compensation cases. An appellate court may modify, reverse, remand for rehearing or set aside the award of the Commission only if the Commission's actions were unauthorized by law or in excess of its authority, fraudulent, unsupported by the facts as found by the Commission, or unsupported by competent evidence. *Lawson v. Emerson Elec. Co.,* 833 S.W.2d 467, 470 (Mo.App.S.D.1992); § 287.495.1. We review the whole record and consider the evidence in the light most favorable to the Commission's findings to determine whether the Commission could have reasonably made the findings and reached the result it did. *Lawson v. Emerson Elec. Co.,* 833 S.W.2d at 471. The Commission is the sole judge of the credibility of the witnesses and the weight and value of the evidence. *Id.* at 470-71. We are not to substitute our judgment on issues of fact for that of the Commission even if we would have made a different initial conclusion. *Id.* at 471.

 The issue argued by Appellant concerns whether there was evidence to support the finding that Employee sustained a permanent total disability within the meaning of Chapter 287. Section 287.020.7 provides:

The term "total disability" as used in this chapter shall mean inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident.

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1986.

The phrase "inability to return to any employment" has been interpreted as the inability of the employee to perform the usual duties of the employment under consideration in the manner that such duties are customarily performed by the average person engaged in such employment. *Kowalski v. M–G Metals and Sales, Inc.,* 631 S.W.2d 919, 922 (Mo.App.S.D.1982). The test for permanent total disability is whether, given the employee's situation and condition, he or she is competent to compete in the open labor market. *Reiner v. Treasurer of State of Mo.,* 837 S.W.2d 363, 367 (Mo.App.E.D. 1992). Total disability means the "inability to return to any reasonable or normal employment." *Brown v. Treasurer of Mo.,* 795 S.W.2d 479, 483 (Mo.App.E.D.1990). An injured employee is not required, however, to be completely inactive or inert in order to be totally disabled. *Id.* The pivotal question is whether any employer in the usual course of business would reasonably be expected to employ the employee in that person's present physical condition, reasonably expecting the employee to perform the work for which he or she is hired. *Reiner v. Treasurer of State of Mo.,* 837 S.W.2d at 367. *See also Thornton v. Haas Bakery,* 858 S.W.2d 831, 834 (Mo.App.E.D.1993); *Kowalski v. M–G Metals and Sales,* 631 S.W.2d at 922.

█ Appellant argues that all of the experts in the case agreed that Employee was "capable of returning to some sort of gainful employment." In support, Appellant points to the testimony of Dr. Overesch, Employee's examining physician, who gave his opinion that Employee was not able to return to work as a truck driver but specified that he was not saying he was unable to do any job. Dr. Overesch also testified that Employee could sit, stand and walk; that he was capable of lifting smaller articles; and that there were other occupations he could perform in the marketplace, such as working in a hardware store.

Dr. Folck, a physician who examined Employee at Appellant's request, issued a report saying that he was not totally and permanently disabled and testified that he "has the capacity for some useful work activities." Dr. Folck also testified, however, that Employee would have trouble with any overhead activities involving his right arm, any job requiring use of his right shoulder and arm, continuous bending and stooping, or activities involving sitting for long periods of time without the ability to get up and move around. Dr. Folck did not know or take into account Employee's educational background, his age, any transferability of skills he possessed earlier, or his residual functional capacity for work.

Two vocational specialists also testified. Robert McClellan evaluated Employee at his attorney's request and testified that he did not believe there were any occupational opportunities available to him considering his restrictions and residual functional capacity. He also testified that no employer, considering his limitations, would be expected to hire Employee, and that physically he was not competent to compete in the open labor market. Appellant emphasizes that Mr. McClellan also testified that Employee was vocationally qualified to be a self-service laundry attendant, self-service gas station attendant, parking lot attendant, and a short-run delivery person. Mr. McClellan made it clear, however, that he was not testifying that Employee was physically qualified to perform those jobs.

Michael Lala, another vocational specialist, evaluated Employee at the request of Appellant. It was his opinion that Employee would be able to work as a self-service gas station cashier, gate tender or service establishment counter attendant.

Employee, who was then 56 years old, testified that he finished the seventh grade but later obtained his GED. While he had been able to perform some physical jobs since the 1987 accident, such as mowing his yard, assisting in the installation of siding on his house, building and helping install cabinets in his house, doing some body work on his own automobiles, installing a battery in one of his vehicles, doing some household jobs, and operating a backhoe for short peri-

ods of time, Employee testified that all of these activities were uncomfortable, could be performed for only short periods, and took extended time to complete. In fact, he testified that the cabinet work took years to complete, the siding project took one year, and he had to give up other projects and hire them done. Most of the projects he worked on at home also required the help of other people because he was physically unable to do them himself. He also testified that he has constant back pain, can tolerate sitting for only one to one and one-half hours without getting up, is restricted in what he can lift and in using his right arm and shoulder, and usually has to lie down and rest for at least fifteen minutes after forty-five minutes of any kind of physical activity.

The Commission incorporated the ALJ's findings in its award. Included in those findings was the following:

> It is clear that Mr. Gordon can perform certain tasks in building cabinets and working on his home by using skills he possessed in the past. However, Mr. Gordon testified he had to lay down several times during the day to get his strength back and that it took him months to perform those tasks even with assistance. I cannot conceive that that [sic] any employer would employ a man aged 56 years of age who could not work eight hours a day without napping several times during the day and who has severe restrictions with his right arm and his back. Mr. Gordon clearly.is active to the extent of his physical limitations and pain tolerances; but he does not have to be bedridden, in a wheel chair or inert to be declared permanently and totally disabled. I find and conclude that given claimant [sic] age, education and physical condition, no employer could be expected to employ him. He is unemployable and is permanently and totally disabled.

There was substantial evidence in the record to support this finding.

Appellant relies principally on *Massengill v. Ozark Action, Inc.,* 762 S.W.2d 850 (Mo. App.S.D.1989), in which the claimant was found not to be totally and permanently disabled. In that case there was evidence that he had "piddled here and there ... around the shop," he had helped a friend put up

some paneling in a bathroom, and he had done some odd jobs or part-time jobs since the accident. Appellant claims that these facts make *Massengill* strikingly similar to the instant case. In *Massengill,* however, there was evidence that the claimant had drawn unemployment benefits and admitted knowing that the physical ability to work was required to qualify for those benefits. Additionally, although his principal complaint was difficulty walking, there was evidence that claimant had been seen walking normally. Significantly, this court said:

> Conflicts in the evidence and the credibility of witnesses are matters for resolution by the commission. Although the claimant presented testimony which, if it had been accepted by the commission, would have supported a more favorable award, the commission was not compelled to believe that testimony and was at liberty to reject all or any part of it which it did not consider credible.

*Id.* at 851. The same principles apply to the instant case.

We find no plain error in this case. The final award of the Commission allowing compensation is affirmed.

MONTGOMERY, P.J., and FLANIGAN, J., concur.