**Milton MINNICK, Appellant,**

v.

**SOUTH METRO FIRE PROTECTION DISTRICT, Respondent.**

**No. WD 51738.**

Missouri Court of Appeals,
Western District.

July 23, 1996.

ing capacity on the open labor market, we remand for further proceedings in accordance with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Milton Minnick worked as a firefighter and paramedic for Respondent South Metro Fire Protection District (the "District") for over six years. In June 1992 Mr. Minnick began experiencing emotional and mental problems and behavioral changes. E. Kent Stevenson, M.D., a psychiatrist, attributed Mr. Minnick's problems to post-traumatic stress disorder brought on by his exposure as a paramedic to a series of disturbing emergency response calls. Particularly important in inducing the disability were an incident involving a teenage suicide and another incident involving the accidental shooting of a teenager.

As a result of these and similar emergencies, by late June 1992 Mr. Minnick became concerned that he would "freeze up" on the job and be unable to properly perform his paramedic duties in response to an emergency call. He also became nervous, anxious, depressed, fearful, agitated, moody, withdrawn, angry and confused. Mr. Minnick also experienced nightmares involving gunshot scenes and other sleep disturbances as well as a loss of concentration and self-esteem.

Mr. Minnick was treated by Dr. Stevenson for the mental and emotional problems he was experiencing. In a report dated July 17, 1992, Dr. Stevenson states that Mr. Minnick was "disabled" and "unable to work" due to post-traumatic stress disorder arising from employment. In another report, Dr. Stevenson states that, as of July 1, 1992, "it was highly apparent that [Mr. Minnick] was emotionally disturbed and unable to work."

Mr. Minnick presented substantial evidence that he was unable to even seek substitute employment at least from July through September 1992 because of "anti-social behavior," sleeplessness, mood swings, angry outbursts, doctor's appointments and similar consequences of his mental condition. Additionally, Dr. Stevenson's report states that Mr. Minnick "had depressive symptomatolo-

Elizabeth Diane Baker, Kansas City, for appellant.

Michael W. Downing, Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and ULRICH and SMART, JJ.

LAURA DENVIR STITH, Presiding Judge.

This is an appeal from a decision of the Labor and Industrial Relations Commission (the "Commission") denying Appellant Milton Minnick any recovery for temporary partial disability. Finding that the Commission erroneously declared and applied the law in denying benefits to Mr. Minnick without determining whether he suffered a loss of earn-

gy to the point that he has not been able to focus on future events" and also states that Mr. Minnick had difficulty dealing with idle time.

Mr. Minnick continued under the care of Dr. Stevenson for the next year, receiving psychotherapy and prescriptions of various medications to control and improve his mental and emotional condition. He did not receive a medical authorization from Dr. Stevenson, or any other doctor, allowing him to return to any work until August 1993. At that time he was not released to return to work as an emergency response worker, but only to undertake other types of employment.

Mr. Minnick presented evidence of his and his wife's actual earnings during the period for which he claims partial disability from July 1, 1992 until he was released back to work in August 1993. The evidence showed that Mr. Minnick performed occasional custodial duties at a friend's car wash on a sporadic basis [1] and assisted his wife in minor aspects of managing a handful of small apartment buildings [2] during that period.

The ALJ found that Mr. Minnick's post-traumatic stress disorder arose out of and in the course of his employment with the District. The ALJ awarded Mr. Minnick per-

manent partial disability based upon a 10% disability to the body as a whole. The ALJ denied Mr. Minnick any award of temporary disability, either total or partial in degree, finding that Mr. Minnick did work during that period and thus was fully able to work at another occupation and that he had failed to present adequate credible evidence of his actual earnings during the relevant period.[3]

Both parties sought review of the ALJ's ruling. The Commission affirmed the award in all material respects. Mr. Minnick appeals.[4]

## II. STANDARD OF REVIEW

■ We undertake a two-step process in reviewing findings of fact made by the Commission:

> In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient, competent and substantial evidence to support the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but

---

1. The car wash owner was a member of the District's Board of Directors and he and Mr. Minnick "got to know each other" on a personal level when Mr. Minnick began experiencing emotional problems and behavioral changes. Mr. Minnick presented evidence of invoices to the car wash for approximately 100 hours of services billed at an hourly rate of $10–$12 for the period of July 1992 through August of 1993.

2. In 1988, Mrs. Minnick was hired by the owner of the apartment building where she lived to manage the apartments. The building owner then referred other apartment building owners to Mrs. Minnick for similar services. At first, Mrs. Minnick merely collected rent checks and showed available apartments to prospective tenants. As time progressed, the scope of her management duties increased to light repair work (fixing clogged toilets, clogged garbage disposals and broken window screens) and lawnmowing. Mr. Minnick occasionally helped in this work but after July 1992 he "started slacking off on doing the maintenance work."

3. This finding is not explained in the order, but may have been based on the fact that Mr. Minnick was unable to produce complete payment

receipts from the apartment management and car wash maintenance services. Mr. Minnick was unable to produce bank statements showing deposits of earnings from July 1992 through March 1993. Similarly, Mr. Minnick was unable to produce a completed and signed 1993 federal income tax return at the time of trial which occurred a few weeks after the filing deadline. Mr. Minnick testified that he was not paid for the car wash work. However, the invoices he submitted to the owner do not show a running account balance or past due amount. Mr. Minnick agrees that the ALJ properly should consider the amounts he should have been paid by the car wash in determining the extent of his partial disability payments, as the reason for the lack of payment was business problems of the car wash owner, and not the nature and extent of Mr. Minnick's injuries.

4. Neither the permanent partial disability award nor the ALJ's finding that Mr. Minnick suffered from post-traumatic stress disorder arising out of the course of Mr. Minnick's employment have been appealed.

must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence. *Davis v. Research Medical Center,* 903 S.W.2d 557, 571 (Mo.App. en banc 1995).

■ We also explained in *Davis* that the "appellate court must give considerable weight to the credibility findings made by those before whom the witnesses gave oral testimony 'in determining where the weight of the evidence lies.'" *Id.* at 567 (citations omitted). By contrast, "[f]indings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous." *Id.* at 571.

■ Moreover, the Workers' Compensation Law is to be broadly and liberally interpreted in favor of the employee and "[a]ny question as to the right of the employee to compensation must be resolved in favor of the injured employee." *Brenneisen v. Leach's Standard Service,* 806 S.W.2d 443, 445 (Mo.App.1991). The statute's meaning should be construed to give effect to every section of the statute, and to extend benefits to the largest possible class of workers. *Brenneisen,* 806 S.W.2d at 445; *State ex rel. River Cement Co. v. Pepple,* 585 S.W.2d 122, 125 (Mo.App.1979).

## III. TEMPORARY PARTIAL DISABILITY IS DETERMINED BY EARNING CAPACITY ON THE OPEN LABOR MARKET, AND NOT SOLELY BASED *ON ACTUAL EARNINGS IN A PROTECTED WORK ENVIRONMENT*

■ On appeal, neither party questions the finding below that Mr. Minnick suffered a permanent partial disability of 10% and that he was no longer able to work in the emergency response field as a result of his post-traumatic stress disorder. The issue on which the parties disagree is whether Mr. Minnick was also entitled to an award of temporary partial disability for the time immediately following the onset of his disability and prior to the time at which he had reached his maximum level of recovery.

■ While temporary partial disability is not specifically defined by the statute, it "obviously is a disability temporary in nature and partial in degree." *Williams v. Pillsbury Co.,* 694 S.W.2d 488, 489 (Mo.App.1985). The award is temporary because it is designed to provide compensation during the "healing period" but not beyond the point where the condition has stabilized or reached maximum progress or where the worker can otherwise return to work. *Phelps v. Jeff Wolk Construction Co.,* 803 S.W.2d 641, 645 (Mo.App.1991); *Brookman v. Henry Transportation,* 924 S.W.2d 286, 290 (Mo.App.E.D. 1996). At the latter point, the extent of any permanent disability can be determined and provided for. For this reason, the general rule is that the claimant should prevail on a claim of temporary disability upon proving an accident arising out of and in the course of employment which results in a temporary disability. *Downing v. Willamette Industries, Inc.,* 895 S.W.2d 650, 653 (Mo.App. 1995).

In the present case, it is undisputed in the record that immediately following the incident Mr. Minnick suffered from an array of abnormal behaviors and emotions, as a result of which he was under continuous psychiatric care, and on a series of medications, for over one year. It was only at the end of that period that his physician released him to return to work from a medical standpoint. Even at that time, he was not released to return to his prior profession; the Commission found he was 10% permanently partially disabled and was unable to work in his previously chosen field from a medical standpoint.

■ Given this evidence, the Commission could only have found that Mr. Minnick was ill and in a state of recovery during at least part of the period from July 1992 through August 1993. The basis on which the Commission denied any temporary partial benefits of any kind thus appears to have been its belief that Mr. Minnick was completely precluded from eligibility for temporary benefits

because he was employed during that period in occasionally assisting his wife in managing a few apartments and performing light car wash maintenance work on a sporadic basis for a personal acquaintance throughout the disability period, and the Commission was unsure how much money he really earned for this sporadic work. The Commission so indicated by adopting the ALJ's sole finding on this issue, which stated:

> In the instant case, there is no credible evidence as to the claimant's earnings during the time period from July 1, 1992 through August 1, 1993, and thus no basis to determine the proper rate of temporary partial disability. More importantly, if the Claimant is fully able to work at some other occupation, temporary partial would be inappropriate. *See Williams* at 489. Temporary partial disability benefits therefore are denied the Claimant.

We disagree that evidence that Mr. Minnick could perform the above labors during the disability period precluded a finding that he suffered temporary partial disability. The Commission in effect treated temporary disability as an all-or-nothing system of compensation, and in effect held that if a worker is not disabled from all work during the recovery period, then he has no temporary partial disability.

To the contrary, by its very nature, Section 287.180 envisions cases where a reasonably diligent worker is *partially* able to work subject to certain limitations and restrictions. The proper statutory standard is rather:

> the amount which the employee, in the exercise of reasonable diligence, will be able to earn during the disability, to be determined in view of the nature and extent of the injury and the ability of the

employee to compete in an open labor market.

*Id.*

■ The Commission thus erred in considering only the work Mr. Minnick actually did do during the disability period without considering whether Mr. Minnick could compete for employment on the open labor market. The fact that a worker performs light duty work sporadically during the healing period in a protected environment does not necessarily mean that the worker is fully capable of working in another occupation on the open labor market. Yet, the latter is the issue which the Commission was required to determine under the statute.

Missouri has made this point clearly in cases involving claims of temporary or permanent *total* disability. Cases in this area specifically state that neither the worker's ability to engage in occasional or light duty work nor the worker's good fortune in obtaining work other than through competition on the open labor market should disqualify the worker from receiving such total disability benefits under the Workers' Compensation Law. *See e.g., Gordon v. Tri–State Motor Transit Co.,* 908 S.W.2d 849 (Mo.App. 1995) (claimant who did household repair work, lawnmowing, and automotive repair was entitled to total disability benefits because he did such activities at his own pace and with the assistance of others); *Brookman v. Henry Transportation,* 924 S.W.2d 286 (Mo.App.E.D.1996) (mechanic who was not capable of doing his normal job nor competing on open job market but who was released to do light duty work after falling from ladder and whose condition was expected to improve was entitled to temporary total benefits, despite fact that, because of economic necessity, claimant swept floors for two weeks, did remodelling work for four weeks and worked as a telemarketer for three weeks.)[5]

---

5. *See also, Kinyon v. Kinyon,* 230 Mo.App. 623, 71 S.W.2d 78 (1934) (worker entitled to permanent total disability even though he was fortunate enough to obtain employment with the municipality where his uncle was the mayor; to hold otherwise would be to encourage idleness); *Hedlund v. State Accident Insurance Fund Corporation,* 55 Or.App. 313, 637 P.2d 1329 (1981) (a pipe-layer who suffered from an abnormal fear of working near ditches was entitled to a temporary disability award even though he could work pro-

ductively in another line of work where it was unclear during the temporary period whether he might be able to return to his original line of work); *Bliss v. Minneapolis Star & Tribune Co.,* 303 N.W.2d 460 (Minn.1981) (a printing press operator who developed contact dermatitis due to exposure to certain chemicals used in the printing process was entitled to temporary partial benefits even though he was fully capable of

There are no comparable Missouri cases dealing with how to treat sporadic, non-open labor market employment in the case of a temporary *partial* disability, perhaps because in the usual case the partially disabled worker is able to perform light work at his place of employment during the recovery period and thus there is no factual issue as to what he was able to earn during the recovery period. Logic and policy require that the rule set out in *Brookman* applies here, however. In this case, Mr. Minnick was not offered suitable substitute work by his employer and was advised that he would be removed from the payroll because the mental nature of his disability rendered him unable to perform any work of the kind his employer offered. No doubt for this reason, Mr. Minnick argued below that he should receive temporary total disability benefits during his recovery period. Based on the above cases, the Commission could have found that the evidence supported such a determination. It did not do so, however, and Mr. Minnick does not appeal the Commission's denial of temporary total disability.

Given the Commission's determination that Mr. Minnick was permanently partially disabled, however, and given its findings as to the credibility of Dr. Stevenson, no competent and substantial evidence supports its finding that Mr. Minnick was disqualified from temporary partial disability merely because he was able to work sporadically in the jobs noted above. The issue was whether and the extent to which he was fully able to compete on the open labor market.

The evidence shows that the actual work performed by Mr. Minnick was not obtained on the open labor market. The apartment management work arose out of Mrs. Minnick's efforts and contacts long before her husband's disability. Similarly, the car wash work arose out of Mr. Minnick's personal relationship with a member of the District's board of directors. Clearly, the work he did was wholly dissimilar in nature to the emergency response position at which he was previously employed, for it was much less stressful, traumatic and physically challenging.

Mr. Minnick's performance of sporatic, low-stress work after his injury thus does not show that he was necessarily capable of competing on a steady basis outside of the protected environment of a small-scale husband-wife business venture where one can often work at his or her own pace and rely upon the assistance of family members. This is particularly true where, as here, the medical evidence accepted by the Commission demonstrated that, particularly during the early part of the recovery period from July 1992 until his release back to work in other employments in August 1993, Mr. Minnick experienced "anti-social behavior," sleeplessness, depression, low self-esteem, social isolation, mood swings, angry outbursts, inability to focus on the future and similar medical problems.[6]

Because the Commission used the wrong standard in determining Mr. Minnick's eligibility for benefits, we must remand for a new determination of whether and for what period Mr. Minnick was temporarily partially disabled, and the extent of that disability. In so determining, it will again be appropriate for the Commission to consider evidence of Mr. Minnick's actual jobs and earnings. The ultimate issue, however, remains earning capacity, not actual earnings. Although earning capacity may be difficult to determine in a case such as this in which the employee was psychologically disabled from even seeking a job in the open labor market, that very incapacity is a relevant factor to be consid-

performing any other kind of work which did not expose him to certain chemicals).

6. This fully distinguishes *Williams v. Pillsbury Co.*, 694 S.W.2d 488 (Mo.App.1985), relied on by the employer and the Commission to support denial of temporary partial disability benefits. In *Williams* the worker developed an allergy to flour, and thus was immediately and permanently disabled from working in the flour mill where he had previously worked. Because the worker's disabling condition would not improve and the worker was otherwise fully capable of obtaining employment in another line of work, temporary partial disability benefits were not appropriate as there was no healing period because no improvement of the allergy was anticipated. Here, by contrast, the only evidence was that Mr. Minnick did partially recover, with therapy and medication, over the months following his injury.

ered in determining the extent to which Mr. Minnick was temporarily disabled. On remand, the Commission may but is not required to take such additional evidence as it believes will assist it in applying the above standards to determine what Mr. Minnick would have earned in the exercise of reasonable diligence on the open labor market during the period of his recovery in view of the nature and extent of his injury.

Reversed and remanded for further proceedings in accordance with this opinion.

All concur.