

# Missouri Court of Appeals

## Southern District

### Division One

MARLENE STEWART, )
)
        Respondent, )
)
    vs. ) No. SD32827
)
CLINT ZWIEFEL, TREASURER OF ) FILED: February 10, 2014
THE STATE OF MISSOURI AS )
CUSTODIAN OF THE )
SECOND INJURY FUND, )
)
        Appellant. )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**<u>AFFIRMED</u>**

Marlene Stewart now is permanently totally disabled ("PTD"). Whether she was so before, or only after, her last work injury is at issue. We affirm the Industrial Commission's finding of the latter and consequent award of PTD benefits from the Second Injury Fund ("Fund").

### The Fund and Total Disability

To encourage the hiring of disabled persons, the Fund compensates a worker whose work injury combines with prior partial disabilities to cause enhanced overall

disability. ***Schussler v. Treasurer***, 393 S.W.3d 90, 95-96 (Mo.App. 2012); § 287.220. If Ms. Stewart was PTD *before* her last work injury, as Fund claims, the Commission's award cannot stand.

The PTD test is whether the worker can compete in the open labor market. ***Schussler***, 393 S.W.3d at 96. A worker who cannot return to any normal or reasonable employment is totally disabled; she need not be inert or completely inactive. ***Id***. "The key question is whether any employer in the ordinary course of business would reasonably be expected to hire the worker in his or her current physical condition." ***Id***.

### Facts and Background[1]

Ms. Stewart, a middle-age high school graduate, took a job at Subway in late 2008. She worked part-time, five hours a day, four days a week, and was being trained to become a manager. She stood most of the time, making sandwiches and filling food containers. She reported no trouble performing all job duties. She thought the job was a pretty good fit and had no plans to leave, but she got hurt at work in early 2009.

It is undisputed that Ms. Stewart was PTD after the Subway accident. The sole issue is whether she was PTD even before that accident, as Fund urged below and still contends.

Ms. Stewart's medical history dating back to the 1990s includes arthritis, reflex sympathetic dystrophy, degenerative joint and bone disease, carpel tunnel

---

[1] We borrow, without further attribution, largely from the Commission's description of evidentiary facts which are not in dispute.

2

syndrome, and a host of other maladies. She qualified for Social Security Disability in 1997. Thereafter, she worked only sporadically – a total of 29 months over 11 years – in part-time positions to supplement her income:

- 11 months at a hearing-aid center where she filed, cleaned, opened and closed the store, and checked, cleaned and shipped hearing aids;

- One month cleaning rooms at a hotel;

- Several months in telephone sales;

- Three months at a fast-food restaurant where she swept, mopped, cleaned tables and trays, and made salads; and

- Four months at a retail store where she worked as a cashier, straightened up the store, and did pricing.

Despite her medical problems, Ms. Stewart obtained all her jobs by successfully competing in the open labor market – answering job ads, making applications, etc. She performed each job's regular duties without accommodation and, until Subway, was never fired or asked to leave any job due to physical difficulty or inability to do the work.

In the Commission's view, such work history belied total disability. Despite "aches and pains performing her duties," the Commission found that Ms. Stewart was

> able to compete for and obtain a number of part-time positions in the open labor market before the primary injury. [She] did not obtain these positions through the help of family or friends, nor was she relegated to "make-work" while performing these jobs. We are convinced that this evidence demonstrates that [Ms. Stewart], although limited to part-time work, was not permanently and totally disabled prior to the work injury.

The Commission found it consistent with Fund purposes "to award compensation to an employee who, at least up until her last injury, was tenacious enough to compete

for and secure a number of part-time positions even though she was suffering from seriously limiting chronic conditions." The Commission thus awarded Ms. Stewart PTD benefits, payable by Fund, which now appeals.

## Principles of Review

When Ms. Stewart became PTD was a fact issue within the special province of the Commission. *See* **Schussler**, 393 S.W.3d at 96. We defer to the Commission on fact issues. **Michael v. Treasurer**, 334 S.W.3d 654, 662 (Mo.App. 2011). When the record can support either of two opposed fact findings, the Commission's determination binds this court. **Pavia v. Smitty's Supermarket**, 118 S.W.3d 228, 234 (Mo.App. 2003)

## Analysis

We quote, in part, the crux of Fund's argument: The Commission's decision was contrary to "many prior cases" upholding PTD awards to claimants who were "limited in how many hours per week they can work and what they can and cannot do during those limited working hours."

There *are* many such cases, yet Fund's generalization fails under scrutiny. Since Fund urges that **Schussler** has "very similar facts" and is "closely on point," we consider it first.

### Schussler

Ms. Schussler also had prior disabilities, so as here, Fund argued that she was PTD before her last job. The ALJ concurred, finding that Ms. Schussler's prior jobs were "heavily accommodated" and a "multitude of physical problems" left her unable to compete in the open labor market. **Schussler**, 393 S.W.3d at 95. The

4

Commission agreed that "Ms. Schussler was unable to compete in the open labor market prior to her work injury and affirmed that the Fund was not liable for the payment of compensation." ***Id***.

The Western District affirmed. Employability is a matter within the Commission's expertise. ***Id***. at 96. "A claimant's 'good fortune in obtaining work other than through competition' does not preclude a finding of total disability." ***Id***. at 97 (quoting ***Cooper v. Med. Ctr. of Independence***, 955 S.W.2d 570, 575 (Mo.App. 1997)). Rather, "the test is whether the claimant could compete in the open labor market." ***Id***. An appellate court will not substitute its judgment on such factual matters, even if it might find differently. ***Id***. Given these principles and the record, the court could not overturn the Commission's finding that Ms. Schussler could not compete in the open labor market prior to her last injury. ***Id***.

Here, in contrast, Ms. Stewart competed for and won all her jobs in the open labor market – jobs not "heavily accommodated" or even accommodated at all. ***Schussler***'s cited principles, applied to these different facts, yield a different result.

The issue per ***Schussler*** is whether Ms. Stewart could compete in the open labor market. She did, successfully, several times. The key question per ***Schussler*** is whether any employer in the ordinary course of business reasonably might hire Ms. Stewart in her physical condition. Several did. Employability is a matter within the Commission's expertise per ***Schussler***, which also instructs us not to substitute our judgment for that of the Commission. ***Schussler*** supports affirmance of this case, not reversal.

Next, Fund complains of and purports to cite "a line of cases wholly ignored by the Commission...." In fact, the Commission expressly noted four of these cases in explaining its award: *Molder v. Treasurer*, 342 S.W.3d 406 (Mo.App. 2011); *Rector v. Gary's Heating and Cooling*, 293 S.W.3d 143 (Mo.App. 2009); *Grgic v. P & G Construction*, 904 S.W.2d 464 (Mo.App. 1995); and *Pavia*, *supra*. We turn next to these cases.

### *Molder* and *Rector*

Ms. Molder sought PTD benefits after a 2002 workplace injury, but testified at the 2009 hearing that she still did some light, part-time work. The ALJ believed that if Ms. Molder was "performing work on the open labor market, albeit part time, ... she must be considered employable on the open labor market." *Molder*, 342 S.W.3d at 408.

The Commission reversed, finding that the ALJ misapplied the law and that Ms. Molder was PTD. She worked only sporadically, zero to 20 hours per week on an as-needed basis, did not have to work if she was "having a bad day," and was accommodated when she did come to work. "This irregular work," the Commission ruled, "is not employment in the open labor market." *Id*. at 409.

The Western District affirmed the Commission, noting appellate deference to its disability findings. *Id*. Ms. Molder's "limited, sporadic, and highly accommodated" part-time work, gained because her daughter knew the employer, did not compel the Commission to find that she was "employable in the open job market." *Id*. at 413, 414.

6

The court also rejected Fund's notion that part-time workers *must* be deemed "employable in the open labor market, and therefore ineligible for permanent and total disability benefits as a matter of law." *Id*. Fund based this argument on ***Rector v. Gary's Heating & Cooling***, 293 S.W.3d 143 (Mo.App. 2009), which affirmed Fund's PTD liability after Rector's second work-related injury (he worked part-time between the two injuries). The Commission found Fund liable because Rector "'was able to work subsequent to his [first] injury and it was not until the [second injury] caused him to seek treatment and further limit his activities that [Rector] found himself unable to work.'" *Id*. at 147. Since substantial and competent evidence supported these findings, we affirmed the PTD award. *Id*. at 148-49.

The ***Molder*** court rightly saw ***Rector*** as merely affirming the Commission's factual findings. ***Molder***, 342 S.W.3d at 414. "*Rector*'s affirmance of a factual determination by the Commission does not establish a hard-and-fast rule …." *Id*.[2]

*Pavia*

As in ***Schussler***, ***Molder***, and ***Rector***, we deferred to and affirmed the Commission's determination of disability in ***Pavia***. Not surprisingly, we noted that Mr. Pavia's employment "performing a variety of small tasks" did not *automatically*

---

[2] Fund seemingly has reversed its argument from ***Molder***, where it cited part-time work in arguing that Ms. Molder was employable and not PTD. Now Fund cites Ms. Stewart's part-time work for the reverse proposition, that she was PTD and not employable. Of course, either conclusion could be right (or wrong) depending on the Commission's weighing of all relevant facts and circumstances. To repeat, the Commission's factual determination or its affirmance on appeal "does not establish a hard-and-fast rule." *Id*.

preclude the Commission from finding total disability. *Pavia*, 118 S.W.3d at 238. *Pavia* announced no bright line rule, nor do Fund's other cited cases.

What *is* seen in Fund's "line of cases" is near-total deference to Commission disability findings. Each case upheld the Commission's disability determination, PTD or otherwise, with just one distinguishable exception next noted.

### *Grgic*

In the entire "line of cases" cited by Fund, only *Grgic* reversed a Commission disability determination. "No employer on the open labor market would employ a man with the severely limited physical, mental, and communicative abilities which the commission ascribes to Mr. Grgic," who *sometimes* could work "a few hours a day." *Grgic*, 904 S.W.2d at 466-67.

> According to the commission, Mr. Grgic can only do rudimentary tasks with reduced coordination for limited periods, possesses only borderline intelligence, and has significant problems communicating. In short, taking the commission's findings as true, claimant has lost all of his marketable skills. Consequently, the facts found by the commission do not support the award, and it erred in not granting Mr. Grgic the total disability award to which he is entitled by law.

*Id*. at 467. *Grgic* plainly does not govern this case.

### Conclusion

It was within the Commission's "special province" to factually determine if Ms. Stewart was PTD before, or only after, her Subway accident. *Schussler*, 393 S.W.3d at 96. Competent, substantial evidence supported a finding either way, and

reasonable minds could (and did) differ,[3] so the Commission's decision binds us. ***Pavia***, 118 S.W.3d at 234.  Unlike ***Grgic***, this is not the rare exception to the rule of deference to Commission disability determinations.  Fund's proof would support a decision in its favor, "but is not so overwhelming that it compels us to reverse." ***Payne v. Thompson Sales Co.***, 322 S.W.3d 590, 593 (Mo.App. 2010).  We affirm the Commission's award.


DANIEL E. SCOTT, J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. – CONCURS

WILLIAM W. FRANCIS, JR., C. J. – CONCURS

---

[3] The Commission affirmed the ALJ's decision by a 2-1 vote, so three factfinders saw it one way while a fourth disagreed.