**David EIMER, Respondent,**

v.

**BOARD OF POLICE COMMISSIONERS OF KANSAS CITY, MISSOURI, Appellant.**

**No. WD 49439.**

Missouri Court of Appeals, Western District.

Jan. 24, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1995.

Application to Transfer Denied April 25, 1995.

---

Howard L. Lotven, Kansas City, for respondent.

Kathleen Hauser, Acting City Atty., Dennis E. Lee, Asst. City Atty., Kansas City, for appellant.

Before SPINDEN, P.J., and LOWENSTEIN and ELLIS, JJ.

PER CURIAM:

The Board of Police Commissioners appeals from a final award of 15% permanent partial disability entered by the Labor and Industrial Relations Commission (Commission). The issue on appeal is whether there was sufficient and competent evidence to prove the cause and extent of the claimant's disability.

The evidence reflects that David Eimer, a police officer for the Kansas City Police Department, was initially injured in November 1985 in a work-related automobile accident. In July 1987, Eimer entered into a settlement agreement based on a permanent partial disability of 16.5% of the body as a whole referable to the neck and back. On April 16, 1990, Eimer was injured when he was struck by a car while checking cars for city stickers at a police checkpoint stop. This is the accident out of which this claim grew. He was struck in the right ankle and legs and thrown onto the hood of the car with the front of his body hitting the windshield. He then bounced off the hood and windshield and flew twenty feet through the air before landing on the pavement on his back and head. He was taken by ambulance to the hospital and treated for injuries to his ankle, knee, legs, back, neck, face and head. On July 6, 1990, Eimer was involved in a non-work-related motorcycle accident.

Eimer filed a claim against the Board of Police Commissioners seeking compensation for injuries resulting from the April 1990 accident. On January 5, 1993, a hearing was held before an administrative law judge. The ALJ issued findings of fact and rulings of law on April 9, 1993, concluding that Eimer had not met his burden of proving that he had sustained a permanent partial disability as a result of the April 1990 accident. The ALJ did, however, award three weeks compensation for disfigurement sustained as a result of that accident.

Eimer filed an application for review with the Commission. The Commission entered a final award on April 15, 1994 modifying the award of the ALJ and finding 15% permanent partial disability of the body as a whole referable to the neck, back and legs as a result of the April 1990 accident. The Commission also upheld the award of compensation for disfigurement. The Board appeals.

■ The Board contends that the Commission's final award was not supported by sufficient and competent evidence because Eimer failed to prove that he sustained a disability as a result of the April 1990 accident. The Board claims Eimer's physician failed to distinguish between the percentage of disability sustained as a result of the April 1990 accident and the percentage of disability that may have resulted from the non-work-related incident of July 1990.

■ The standard of review is set forth in § 287.495, RSMo 1986.[1] In determining the sufficiency of evidence in a workers' compensation case, this court reviews the evidence and inferences in the light most favorable to the Commission's award. *Johnson v. City of Kirksville*, 855 S.W.2d 396, 398 (Mo. App.1993). The Commission's final award

---

1. All statutory references are to the Revised Missouri Statutes of 1986, unless otherwise indicated. Pursuant to § 287.495, an award may be set aside only if (1) the commission acted without or in excess of its powers; (2) the award was pro-

cured by fraud; (3) the award is not supported by the facts; or (3) there was not sufficient competent evidence to warrant making the award.

will not be set aside unless it is not supported by substantial evidence or it is clearly contrary to the overwhelming weight of the evidence. *Strate v. Al Baker's Restaurant,* 864 S.W.2d 417, 419 (Mo.App.1993). This court disregards any evidence which might support a finding different from the Commission's even though the evidence may have been sufficient to support contrary findings. *Story v. Southern Roofing Co.,* 875 S.W.2d 228, 230 (Mo.App.1994). The Commission determines the credibility of witnesses and this court will not substitute its judgment for that of the Commission on issues of fact. *Id.* Any doubt is to be resolved in favor of the claimant and in favor of workers' compensation coverage. *Tate v. Southwestern Bell Telephone Co.,* 715 S.W.2d 326, 328 (Mo.App. 1986).

 The award of the Commission is not solely dependent on medical evidence, rather its findings are to be judged on the basis of the evidence as a whole. *Nelson v. Consolidated Housing Dev. and Mgmt. Co.,* 750 S.W.2d 144, 148 (Mo.App.1988). The "[e]xtent and percentage of a disability is a finding of fact within the special province of the Industrial Commission." *Fogelsong v. Banquet Foods Corp.,* 526 S.W.2d 886, 892 (Mo.App.1975). In determining the percentage of disability, the Commission is not bound by the percentage estimates of medical experts and it may consider all of the evidence, including the testimony of the employee and all reasonable inferences. *Doria v. Chemetron Corp.,* 784 S.W.2d 323, 325 (Mo.App.1990). The "[t]estimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability, especially when taken in connection with, or where supported by, some medical evidence." *Strate v. Al Baker's Restaurant,* 864 S.W.2d at 420.

In this case, the Commission's finding of disability is based on Eimer's testimony and the report of Dr. Zimmerman. Based on Eimer's testimony, the Commission found that Eimer's:

> neck does not have the range of motion that it did before the accident. It is stiff

and occasionally causes a dull throbbing pain. His upper back flares up and causes him a little pain about once a week. His lower back causes him the most problems. He has pain there almost everyday without a break. He cannot bend over and pick up items and finds it difficult some days to walk, sit or ride in a car. His left knee is a bit stiff at times and cannot handle the stress that it did before. He has trouble cutting the grass and sometimes has to stop and take a break. Finally, his right ankle has a permanent scar, is stiff and won't handle the stress it could previously. The claimant testified that he had none of these problems prior to the April 26, 1990 accident. The claimant was also involved in a non-work related motorcycle accident on July 6, 1990. The claimant testified that accident did not cause any additional problems in his back, neck and legs.

The Commission also cited to the report of Dr. Zimmerman in concluding:

> the claimant has a cervicothoracic strain of a chronic nature characterized by pain and discomfort affecting his cervicothoracic spine; lesser occipital nerve entrapment symptomatology; and a left sighted supraspinatus syndrome. The whiplash injury affecting the cervicothoracic spine with the above mentioned diagnosis has caused permanent partial disability of the body as a whole rated at 10 percent. The claimant also has lumbar sacral spine paraspinous myofascitis of a chronic nature causing permanent partial disability of the body as a whole rated at 10 percent. With reference to the claimant's varicosities affecting his lower right extremity with evidence of stasis determitis, the claimant has permanent partial disability of the body as a whole rated at 10 percent. Dr. Zimmerman concluded that, considering all the ratings above, the claimant has a total rating of 30 percent permanent partial disability of the body as a whole referable to the neck, back and legs **as a result of those two accidents.** (Emphasis added).

The Commission found Dr. Zimmerman to be more credible than the Board's doctor. The Commission also found claimant's testimony to be "entirely credible." The Com-

mission found that claimant was entitled to an award of 15% permanent partial disability of the body as a whole referable to the neck, back and legs as a result of his April 26, 1990 accident. This court holds the award is not supported by substantial evidence.

 Eimer bears the burden of proving an accident occurred and that it resulted in injury. *Goleman v. MCI Transporters*, 844 S.W.2d 463, 465 (Mo.App.1992). He must not only show causation between the accident and the injury but also that a disability resulted and the extent of such disability. *Id.* When two events, one compensable and one not compensable, contribute to an alleged disability, it is the claimant's burden to prove the nature and extent of the disability attributed to the job-related injury. *Bersett v. National Super Markets, Inc.*, 808 S.W.2d 34, 36 (Mo.App.1991).

Eimer's case rests on Dr. Zimmerman's narrative report plus his own testimony. Dr. Zimmerman rated Eimer's disability at twenty percent to the body as a whole as a result of Eimer's neck and low back injuries and ten percent due to "varicosities affecting his right lower extremity with evidence of stasis determitis." However, Dr. Zimmerman's medical report *did not* distinguish between the injuries sustained by Eimer as a result of the April 26, 1990 accident and the July 6, 1990 accident. Eimer missed over five weeks from work subsequent to the July accident and only ten days after the accident in April.

Nor did Dr. Zimmerman's medical report distinguish between the injury sustained to Eimer's ankle before the April 26, 1990 accident and the ankle injury sustained as a result of the April 26, 1990 accident. Dr. Zimmerman's report notes that "with reference to his right ankle, [Eimer] states that at the time of the injury sustained on April 26, 1990, that he did have a deep bruise with pain and discomfort affecting this ankle. As stated, Dr. Arbab's record would suggest that this injury to his ankle had preceded the injury of April 26, 1990; however, it did require treatment while hospitalized."

Dr. Zimmerman's narrative report also states that Eimer has no prior injuries, operations or accidents. The doctor apparently did not know that Eimer was involved in an accident in 1985 that left him 16.5% permanently disabled with regard to his neck and back.[2] Thus, based on Dr. Zimmerman's narrative report, it would be pure speculation and conjecture to attribute any of his twenty percent disability rating to the neck and back injuries allegedly sustained by claimant in the accident of April 26, 1990, as opposed to Eimer's prior and subsequent injuries. Furthermore, based on Dr. Zimmerman's report, it would be pure speculation and conjecture to attribute any of Eimer's ten percent disability rating to the ankle injury allegedly sustained by claimant in the accident of April 26, 1990, as opposed to Eimer's prior injury. Therefore, the question becomes whether Eimer's testimony coupled with Dr. Zimmerman's report constitutes substantial evidence upon which the Commission could find that Eimer sustained a compensable injury to his neck and back and ankle on April 26, 1990.

On direct examination, he was asked what injuries he received as a result of the accident on April 26, 1990. Eimer testified that his neck hurt, "my lower back hurt, I had lacerations on my face, my left knee hurt and my right ankle was—my left knee was also lacerated—my right ankle was bruised and aching."

Eimer was then asked:

Q. Would you describe to the Judge what problems you **presently** have with your neck?

A. My neck—I don't have the range of motion that I did before the accident in my neck. It's stiff and occasionally causes, I have a dull, throbbing pain.

Q. How often do you **have** this dull, throbbing pain?

A. Two or three times a week.

Q. Can you describe for the Judge what problems you have **now** with your upper back?

---

**2.** The rating of 16.5% permanent partial disability awarded in 1987 to Eimer for his neck and back injuries continues undiminished when he was injured again in the neck and back. *Helm v. SCF, Inc.*, 761 S.W.2d 199, 200 (Mo.App.1988); § 287.190(6) RSMo.Cum.Supp.1993.

A. My upper back—flares up maybe once a week. It doesn't cause me the problem that my lower back does.

* * *

Q. Now can you describe to the Judge the **present** problems you **are having** with your lower back?

A. **I have** pain from that almost every day without any break. Some days it is worse than others. I can't bend over and pick up items. I find it difficult some days to walk or sit in a chair or ride in a car. Of all the problems that I have, probably my lower back is the worst.

Q. Can you describe what the pain feels like?

A. Some days it is just an ache and other days it's a very sharp pain.

Q. Can you describe to the Judge what problems you **now** have with your left knee?

A. It is just a bit stiff at times and it won't handle the stress that it did before ...

Q. Can you tell the Judge what problems you **now** have with your right ankle?

A. It's just stiff and it won't handle the stress or a normal work load on it.

Q. **Is** there any permanent scarring or bruising on the ankle?

A. I have a permanent scar that appears to be an impact bruise on my right ankle.

* * *

Q. What was your neck like prior to the accident as far as motion, range, pain?

A. Normal.

Q. Did you have any problems with it?

A. No.

Q. Your back prior to the accident, was there any problems with it?

A. No.

Q. And your ankle prior to the accident, was there any problems with it?

A. No.

Q. Was there any injuries to the ankle prior to the accident?

A. I had a small laceration that was almost healed on my right ankle.

Q. And was there any permanent damage, were you having any problems with your ankle as far as stiffness or problems at that time?

A. No.

Q. And were there any problems with your left knee prior to the accident?

A. No.

* * *

Eimer also testified on direct that the accident of July 6, 1990, did not cause any additional problems in his back, neck or legs.

On cross-examination, Eimer admitted that on November 24, 1985, he was involved in an auto accident while he was working as a Kansas City police officer and that as a result of the accident, he filed a Workers' Compensation Claim against the Board of Police Commissioners of Kansas City. Eimer admitted that he injured his left collarbone, his neck, his right shoulder and his upper and lower back. Eimer also admitted that on November 13, 1986, he had an acute flare up of the low back injury while picking up some letters. Eimer admitted further that on October 27, 1986, he complained to Dr. Cook that he had a limitation of the range of motions in his neck and tenderness in his lower back including a muscle spasm in his low back. Eimer also admitted that on June 19, 1987, he complained to Dr. Overesch that he had a pain in his neck that gave him a very bad headache and pain in his lower back.

Eimer also testified that he has filed a civil suit against the driver who injured him on April 26, 1990 and that his deposition was taken. Eimer admitted that the following questions were asked and answered in his deposition for the civil suit.

In his deposition, Eimer was asked whether on occasions before April 26, 1990, did he have neck discomfort? Eimer answered, "No." Eimer was also asked, "How long you believe it was before your neck or upper back discomfort or pain went away after this November 1985, car accident." Eimer responded five or six months. Eimer agrees that what he told Dr. Overesch was incorrect but, "it was an estimate on my part."

In his deposition, Eimer was asked, "From that period of time, five to six months after that prior accident of November '85, up through April 26th, 1990, did you ever have any kind of neck discomfort?" Eimer answered, "No." Eimer was also asked, "Had you ever injured your low back on any occasion before April 26, 1990?" Eimer answered, "No." Eimer was further asked "on occasions before April 26th, 1990, did you ever receive any treatment to your low back?" Eimer responded, "To my lower back, no." Eimer now admits, in the compensation action, that he had injured his lower back and that he also had treatment on his lower back. Eimer admitted that the answers he gave at the May 1, 1992 deposition are incorrect.

In his deposition, Eimer was asked, "Besides your collarbone, your neck and your upper back, did you injure any other part of your body in that November 1985, car accident?" Eimer answered, "Not that I recall." Eimer was specifically asked whether he injured his lower back. Eimer replied, "Not that I recall." Eimer now admits that testimony is incorrect.

In his deposition, Eimer was asked, "Before April 26, 1990, did you ever receive any kind of treatment to your right ankle?" Eimer said, "No." On cross examination, Eimer admitted that on November 20, 1989, he went to Prime Health because his right ankle was swollen and there was some kind of ulcerated area that was draining from his right ankle. Eimer also admitted that he told Prime Health that this condition existed for seven months. Eimer further admitted that on November 22, 1989, he was assessed with "cellulitis in the right pretibial area that was improved." The edema, which was the swelling of his right ankle, had also decreased as of that date as opposed to November 20th. Eimer admitted that on January 22, 1990, he again went to Prime Health to complain that his right ankle was infected. Prime Health told him that they wanted him to undergo bed rest and keep the leg elevated. Eimer told them that he was unable to do so. Prime also started giving him oral medication, Keflex. On March 12, 1990, Eimer's right leg was infected and he had a rash all over his body. This was the same area of his right leg that he had been seen for on November 20, 1989, November 22, 1989, and January 22, 1990. Eimer admitted in his deposition that his deposition testimony regarding his right ankle never being treated, was incorrect.

Eimer also admitted on cross-examination in the case at bar, to injuries he sustained to his back subsequent to the accident of April 26, 1990. On July 6, 1990, Eimer had an accident from which he claims he developed symptoms to his neck and back. Eimer testified that as a result of the July accident, his back and neck muscles had tightened up and he was in severe pain, especially in his lower back and neck. He also testified that on May 28, 1991, while he was at home, he bent over to pick up a hand tool and when he straightened up, he developed severe pain in his back and neck. Eimer agreed that this was essentially the same type of incident that happened in November 1986 after the November, 1985 accident. Eimer also testified that on January 16, 1992, there was an incident where he vaulted over a fence and when he landed, his back started bothering him again. He missed five days of work after this. Eimer testified further that on August 25, 1992, while he was riding his police motorcycle, he was struck in the rear by another vehicle. After the accident, he was taken by ambulance to Research Hospital for injuries to his neck and back. Eimer testified that he missed six days of work from this accident.

As stated above, the Commission is the sole judge of witness credibility. *Johnson v. City of Kirksville*, 855 S.W.2d at 398. However, if a claimant relies on his own testimony alone to prove a material issue and his testimony is so contradictory and conflicting that it lacks probative force and is self-destructive and there is no other fact or circumstance tending to show which version is true, claimant has not made a case. *Sita v. Falstaff Brewing Corp.*, 425 S.W.2d 487, 489 (Mo.App.1968). In sum, the contradictory testimony of a single witness relied on to prove a fact does not constitute substantial evidence and is not probative of that fact. *Griggs v. A.B. Chance Co.*, 503 S.W.2d 697, 703 (Mo.App.1973).

In the case at bar, the material issue is the extent of permanent partial disability sustained by Eimer from the accident of April

26, 1990. As mentioned above, Dr. Zimmerman's narrative report totally failed to establish the extent of permanent partial disability sustained by Eimer as a result of this accident. On direct examination, Eimer testified that he did not have any problems with his neck and back prior to the accident of April 26, 1990. With regard to his ankle, he testified that he had a small laceration that was almost healed on his right ankle. On cross examination, Eimer's testimony was contradictory and conflicting with his direct testimony and his deposition. He admitted that he had neck and back problems prior and subsequent to the accident of April 26, 1990. He also admitted that contrary to his testimony on direct examination, he had a long history of right ankle problems prior to the accident of April 26, 1990. Thus, Eimer's testimony alone or coupled with Dr. Zimmerman's negative report does not constitute substantial evidence that he sustained compensable injuries to his neck, back and ankle as a result of the accident of April 26, 1990.

The portion of the Commission's decision which awarded Eimer 15% permanent partial disability of the body as a whole referable to the neck, back and legs as a result of his April 26, 1990 accident, is reversed. The portion of the Commission's decision which awarded Eimer three weeks compensation for disfigurement based on a small scar above his right eyebrow is affirmed.