EDWARD R. ARDINI, JR., JUDGE
Jackson County ("Employer") appeals from the Final Award Allowing Compensation issued by the Labor and Industrial Relations Commission ("Commission") on the claim for workers' compensation benefits filed by Marc Earnest ("Claimant"). The award incorporated and supplemented the decision of the Administrative Law Judge ("ALJ"). Employer alleges that the "trial court"[1] erred because: (1) it relied on overruled case law and (2) the extent of the disability was against the substantial weight of the evidence. The award of the Commission is affirmed.
FACTUAL AND PROCEDURAL BACKGROUND
Claimant began working for Jackson County as an entry-level laborer in February 2014. On March 11, 2014, Claimant was instructed by his supervisor to cut down a large tree. The tree fell on top of him, resulting in temporary unconsciousness. Upon waking, the tree was laying across his torso and leg. His co-workers pulled the tree off of him, and he was transported by ambulance to a hospital. Multiple x-rays and a later MRI revealed, inter alia , that Claimant suffered from an acute T7 compression fracture with retropulsion of the bone into the spinal canal. Claimant was initially hospitalized for about a week and given a back brace to wear at home.
Due to believed fracture instability, Claimant was admitted to the hospital from April 1 to April 13 to undergo two surgeries. The surgeries included rib resection for bone grafting, partial removal of the T7 vertebra, and hardware placement for anterior and posterior spinal fusions. After the surgeries, Claimant was released from the hospital but continued to follow up with his surgeon, Dr. Wilkinson, often complaining of back pain and muscle spasms. Dr. Wilkinson prescribed physical therapy and opioid pain medications before *467 referring Claimant to a pain specialist. On June 23, 2014, Dr. Wilkinson noted that he was "still concerned about [Claimant]'s ability to ever go back to his previous work."
Around September 2014, Claimant began to regularly see Dr. Pang for pain management. For approximately a year, Dr. Pang prescribed Claimant various medications for his complaints of pain in the thoracic area and where his rib was resected as well as back spasms. Claimant also reported issues such as difficulty sleeping. His medications included pain medications, anti-inflammatories, and muscle relaxants. On June 5, 2015, Dr. Pang found Claimant to be at maximum medical improvement and imposed a fifty pound lifting restriction. The doctor opined that Claimant sustained a "fifteen percent permanent partial disability in regard to the thoracic spine, body as a whole." Claimant was referred to his primary care physician to continue his medication regimen.
Throughout this time, Claimant also attended physical therapy as recommended by Dr. Wilkinson and Dr. Pang. On April 22, 2015, a Functional Capacity Evaluation was performed. Claimant was able to lift up to twenty pounds; carry up to twenty pounds; push forty-nine pounds, and pull fifty-seven pounds. Claimant reported, however, that movement aggravated his symptoms.
Claimant testified at the hearing about the pain and limitations that he continues to experience. He stated that he has good and bad days and attempts activities accordingly. On a good day, he can walk about twenty minutes and stand for about thirty minutes. On a bad day, he can only walk for five to ten minutes and stand for as little as two to five minutes. Claimant can lift about thirty pounds from his waist to his shoulders and approximately ten to fifteen pounds from the floor to his waist but has minimal tolerance for bending and does not twist or turn his body. His pain is exacerbated by cold weather. Claimant tries to perform chores such as cleaning the kitchen, doing laundry, vacuuming, and cooking. He does yardwork such as mowing but that task can take as much as three days. He often only sleeps for about an hour and a half before waking due to back spasms, and he naps three to five times during a day when he is able.
Dr. Stuckmeyer, a board certified orthopedic surgeon, conducted a medical evaluation of Claimant, which included a review of Claimant's medical records and an in-person physical examination. He noted Claimant's symptoms and complaints throughout his treatment with both Dr. Wilkinson and Dr. Pang as well as the medication regimens that both prescribed. Claimant similarly disclosed during Dr. Stuckmeyer's physical examination that he continued to have significant back pain, left-side rib pain, and occasional pain radiating into both lower extremities. Claimant was also having difficulty with prolonged standing, walking, lifting, twisting, sitting, driving, and sleeping. The doctor testified that these symptoms were consistent with Claimant's spinal fracture and major operative procedures involving the spine and chest wall. Claimant was continuing his medication regimen, which included pain medications, anti-inflammatories, and a muscle relaxant.
Dr. Stuckmeyer imposed numerous work restrictions, which he testified were consistent with those he had placed on other individuals with similar injuries. These work restrictions included no prolonged standing or sitting; the need to change positions throughout the day; no repetitive lifting, bending, or twisting; no repetitive stair climbing; no ladder climbing; no driving of a commercial vehicle due to occasional OxyContin use; and no pushing, *468 pulling, or lifting in excess of ten to fifteen pounds on an occasional basis. After reviewing the vocational assessment described infra , he "assessed a sixty percent disability to the body" as a whole.
Michael Dreiling ("Dreiling"), a vocational rehabilitation specialist, testified that Claimant was not a realistic candidate for employment in the open labor market. In reaching this conclusion, he reviewed Claimant's medical records; interviewed Claimant regarding his educational background, work history, and physical condition; and administered an aptitude test.
Dreiling testified that without considering other issues such as educational and work background, the work restrictions imposed by Dr. Stuckmeyer limited Claimant to less than a sedentary level of activity in the labor market. Although positions that could make the necessary accommodations might be available to a highly skilled individual in a sedentary office setting, Claimant fell outside of this demographic, as he had dropped out of high school, completed his GED in 2009, and his employment opportunities would be found in entry-level, unskilled positions that rely more on physical capabilities.
Based on the work restrictions imposed by Dr. Stuckmeyer, Dreiling concluded that Claimant would not be able to perform tasks similar to those in his past positions involving concrete installation, cabinet manufacturing and installation, residential construction, over-the-road driving, fire and water damage cleanup, or wiring and installing boat parts. Claimant's previous employment relied on good physical functioning skills, and he had not acquired transferable job skills that were compatible with his current limitations.
Claimant reported little experience using a personal computer and difficulties typing due to his level of pain. Claimant also noted that he needed to lie down for ten minute-periods approximately five times a day and that he had trouble concentrating due to pain. As examples, Claimant indicated ten minutes into the aptitude test that he was having problems focusing on the questions and he was constantly moving about the office during his interview, both due to his pain. Claimant scored at the eighth grade level on the aptitude test.
Stuart Ford ("Ford") is a private investigator whose business performed surveillance on Claimant over three days in May 2015 and again on two days in June and July of 2016 for a total of approximately thirty hours. From the thirty hours of surveillance, Claimant was videoed being active for approximately ninety minutes in May 2015 and thirty-five minutes in June 2016.[2] Claimant was not seen at all during the surveillance attempted in July 2016.
In May 2015, Claimant was observed mowing his lawn, moving around a store for fifteen minutes, and walking in and out of his doctor's office. In June 2016, Claimant is shown bouncing his mower (in what appeared to be an attempt to get wet clumps of grass out of the mower) and briefly crouching, getting down on all fours, and standing up unassisted. Claimant was also observed pushing a broom for a few minutes, hosing down his driveway for about thirty minutes, and handling the hose above his head for approximately five to ten seconds.
Claimant filed a claim against Employer seeking compensation for his injuries. On October 26, 2016, a hearing was held before the ALJ. The ALJ issued Findings of Fact and Rulings of Law concluding that Claimant was entitled to permanent total disability benefits.
*469 Employer sought review by the Commission of the ALJ's award. The Commission affirmed and adopted the ALJ's award, finding that it was "supported by competent and substantial evidence and was made in accordance with the Missouri Workers' Compensation Law." The Commission issued a supplemental opinion attaching and incorporating the award "to the extent not inconsistent with [the] supplemental opinion." Employer appeals.
STANDARD OF REVIEW
Article V, section 18 of the Missouri constitution"provides for judicial review of the [C]ommission's award to determine whether the award is 'supported by competent and substantial evidence upon the whole record.' " Hampton v. Big Boy Steel Erection , 121 S.W.3d 220, 222 (Mo. banc 2003). Section 287.495.1[3] further provides that we "shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award" on the following grounds:
(1) That the commission acted without or in excess of its powers;
(2) That the award was procured by fraud;
(3) That the facts found by the commission do not support the award; [or]
(4) That there was not sufficient competent evidence in the record to warrant the making of the award.
Questions of law are reviewed de novo , but "whether a particular employee is permanently and totally disabled is a factual, not a legal, question." Molder , 342 S.W.3d at 409 (citation omitted). The factual question is "whether Claimant is employable." Id. (citations omitted). Although we are not required "to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award [,]" "[w]e will not substitute our judgment on issues of fact where the Commission was within its powers, even if we would arrive at a different initial conclusion." Hampton , 121 S.W.3d at 223 (regarding inferences); Molder , 342 S.W.3d at 409 (citations omitted) (regarding issues of fact). "The Commission, as the finder of fact, is free to believe or disbelieve any evidence. We defer to the Commission's findings as to weight and credibility of testimony and are bound by its factual determinations." Molder , 342 S.W.3d at 409 (citation omitted). An award will not be supported by competent and substantial evidence "in the rare case when [it] is contrary to the overwhelming weight of the evidence." Hampton , 121 S.W.3d at 223.
POINT I-OVERRULED CASE LAW
In its first point on appeal, Employer claims that the Commission erred by adopting the ALJ's amended final award, which cited to Gordon v. Tri-State Motor Transit , 908 S.W.2d 849 (Mo. App. S.D. 1995), arguing this reliance was improper because Gordon was overruled by Hampton , 121 S.W.3d 220.
The ALJ relied on Gordon for the general legal proposition that "[a]n injured employee is not required ... to be completely inactive or inert in order to be totally disabled." 908 S.W.2d at 853 (citation omitted). Employer seeks to attack this well-recognized standard by assigning a breadth to Hampton that finds no support in the opinion. Hampton simply overruled Gordon and numerous other appellate decisions on the narrow point of *470 clarifying the standard of review established by the Missouri constitution and section 287.495.1. Molder , 342 S.W.3d at 409 n. 1 ("In clarifying the proper standard of review, Hampton overruled a large number of prior decisions on this discrete point." (citation omitted)). Significantly, legal propositions unrelated to the standard of review, including that an injured employee does not have to be completely inactive in order to be totally disabled, were not overruled by Hampton . See Angus v. Second Injury Fund , 328 S.W.3d 294, 297 n. 1 (Mo. App. W.D. 2010) ; see, e.g. , Molder , 342 S.W.3d at 413 (upholding the Commission's factual finding that claimant was permanently and totally disabled, even though she worked part-time performing a variety of small tasks at an auto dealership). The Commission, by incorporating the findings and rulings of the ALJ that relied in part on Gordon , did not err. Point denied.
POINT II-SUFFICIENCY OF THE EVIDENCE
In its second point on appeal, Employer alleges that the Commission erred because the award of permanent total disability benefits was against the substantial weight of the evidence. Pointing to inconsistencies in Claimant's testimony, Employer asserts that Claimant was not a credible witness and, further, that the evidence from others who relied on his statements was also "tainted." Item-by-item, Employer discusses contradictions in Claimant's testimony regarding issues such as his ability to do yardwork and the amount of pressure required to close a flatbed load lock. Because of these inconsistencies and their purported impact on the remaining evidence, Employer asserts that the extent of Claimant's disability (total rather than partial) was not supported by substantial and competent evidence.
Section 287.020.6[4] defines "total disability" as the "inability to return to any employment and not merely [an] inability to return to the employment in which the employee was engaged at the time of the accident."
The test for permanent total disability is whether the worker is able to compete in the open labor market. The critical question is whether, in the ordinary course of business, any employer reasonably would be expected to hire the injured worker, given his present physical condition.
Molder , 342 S.W.3d 406 at 411 (citations omitted). We must determine whether the whole record "contains sufficient competent and substantial evidence to support the award" of permanent total disability benefits. See Angus , 328 S.W.3d at 297 (quoting Hampton , 121 S.W.3d at 222-23 ). Substantial evidence can consist of "the testimony of the claimant or other lay witnesses as to facts within the realm of lay understanding ... especially when taken in connection with, or where supported by, some medical evidence." Eimer v. Bd. of Police Commr's of Kansas City , 895 S.W.2d 117, 120 (Mo. App. W.D. 1995) (citation and internal quotation marks omitted).
The ALJ (and therefore the Commission when it adopted the ALJ's findings) specifically considered the issue of Claimant's inconsistent testimony and credibility in her Findings of Fact and Rulings of Law. The ALJ found Claimant was credible, and her findings and rulings regarding the extent of Claimant's disability found support not only from his testimony but also through the reports and testimony of *471 Claimant's doctors, physical therapists, and other witnesses.
For example, there were inconsistencies between Claimant's deposition and trial testimony regarding his ability to do yardwork. Claimant testified in a deposition that he was not able to mow in the summer of 2015, but video surveillance obtained near that time showed him mowing for a brief period. Claimant testified at trial that he has good and bad days and on occasion would force himself to attempt lawn work but that after an active day he "shuts down." The ALJ specifically addressed this issue, stating:
[E]mployer provided the defense that [Claimant] is employable in the open labor market by first presenting two surveillance tapes [ ] showing that [Claimant] was inconsistent on whether or not he mowed his yard ... and walking in what appears to be a Home Depot without assistance. While I consider [Employer]'s evidence, I do not find that ... the activities shown on the surveillance tapes translate to [Claimant]'s ability to perform sustained employment. These are mere snapshots in time.
The ALJ noted that Claimant's complaints of pain and muscle spasms and their effects were supported by corresponding reports to his doctors and physical therapists, such as medical records noting that Claimant had to sleep for two-and-a-half hours immediately after a day of prolonged standing. As further support, the ALJ discussed the testimony of Dr. Pang, who reviewed the surveillance of Claimant doing some yardwork and opined that "a one-time surveillance video of one activity is not always reflective of one's capability to hold a full-time job working eight hours per shift which may be constantly physically demanding[,]" and noted that a Claimant may be "active to the extent of his physical limitations and tolerances, but he does not have to be bedridden, in a wheelchair, or inert to be declared permanently totally disabled." Gordon , 908 S.W.2d at 854.
Employer nevertheless posits that because Claimant's testimony was at times inconsistent or contradictory that it cannot constitute competent and substantial evidence to support the award. Employer further argues that the conclusions of witnesses who relied on Claimant's responses "are likewise tainted." Although not quoted, Employer presumably relies on the following passage from Eimer :[5]
[I]f a claimant relies on his own testimony alone to prove a material issue and his testimony is so contradictory and conflicting that it lacks probative force and is self-destructive and there is no other fact or circumstance tending to show which version is true, claimant has not made a case. In sum, the contradictory testimony of a single witness relied on to prove a fact does not constitute substantial evidence and is not probative of that fact.
895 S.W.2d at 123 (citations omitted).
Unlike in Eimer , Claimant's testimony regarding the extent of his pain and disability was supported by the medical evidence of his injury along with the testimony and reports of his doctors, physical therapists, and two experts. This court "defer[s] to the Commission on issues involving the credibility of witnesses and the weight to be given testimony[.]" Angus , 328 S.W.3d at 300 (citation omitted); see also Molder , 342 S.W.3d at 409 (citation omitted). We "will not substitute [our]
*472 judgment for that of the Commission on issues of fact." Eimer , 895 S.W.2d at 120 (citation omitted); see also Molder , 342 S.W.3d at 409 (citations omitted). The Commission adopted the ALJ's findings and rulings and specifically noted that it was "not persuaded to disturb the [ALJ]'s credibility determination[.]"[6] As concluded in a main case relied on by Employer:
[Employer]'s assignment of error is in actuality a thinly disguised invitation to us to substitute our assessment of credibility for that of [the] Commission. We respectfully decline ... [A] reviewing court defers to [the] Commission on issues involving credibility of witnesses and the weight to be given their testimony.
Marrone v. Modine Heat & Transfer , 918 S.W.2d 315, 321 (Mo. App. S.D. 1996) (citation omitted).
The Commission's award of permanent total disability benefits to Claimant is supported by competent and substantial evidence and is not contrary to the overwhelming weight of the evidence. See Hampton , 121 S.W.3d at 224 (citing Mo. Const. art. V, section 18 ); see also § 287.495.1. Employer's second point is also denied.
CONCLUSION
The Commission's award is affirmed.
All concur.

Employer's points relied on refer to the "trial court." Presumably, Employer is actually referring to the ALJ. However, we do not review the award of the ALJ; rather, we review the award of the Commission. Molder v. Missouri State Treasurer , 342 S.W.3d 406, 410 (Mo. App. W.D. 2011) (citation omitted). Thus, the relevant questions on appeal will be whether the decision reached by the Commission (1) is lawful and (2) supported by substantial evidence. Id. at 411 (citation omitted).

These times are estimates given by Ford during his testimony.

All statutory citations are to the Revised Statutes of Missouri 2016 as supplemented unless otherwise indicated.

RSMo Supp. 2014.

Interestingly, despite Employer's argument in Point I that the Commission erred by relying on a case allegedly overruled by the Missouri Supreme Court in Hampton , Employer in Point II relies on cases similarly overruled by the same case.

Although we are to defer to the factual findings of the Commission, the Commission itself considers such issues de novo and is entitled to reach its own conclusions even on issues of witness credibility. Molder , 342 S.W.3d at 410.