

# In the Missouri Court of Appeals
# Eastern District

## <u>DIVISION ONE</u>

| | | |
|---|---|---|
| BILLY HOOD, | ) | No. ED110331 |
| | ) | |
|     Appellant, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
|     vs. | ) | Injury No. 12-107135 |
| | ) | |
| MICHAEL MENECH, VANDALIA AREA | ) | |
| HISTORICAL SOCIETY and MISSOURI | ) | |
| STATE TREASURER AS CUSTODIAN OF | ) | |
| THE SECOND INJURY FUND, | ) | |
| | ) | |
|     Respondents. | ) | Filed:  November 22, 2022 |

Billy Hood ("Claimant") appeals the decision of the Labor and Industrial Relations

Commission ("the Commission") denying him workers' compensation benefits and ordering him

to reimburse the Second Injury Fund $23,226.27.  We affirm.

## I.       BACKGROUND

This case has a lengthy procedural posture consisting of, (A) Claimant's work-related

injury, his workers' compensation claim, and the ALJ's initial decision; (B) Claimant's civil

action and settlement agreement; (C) the Commission's temporary award; and (D) the final

hearing before the ALJ and the Commission's final award.

**A.** **Claimant's Work-Related Injury, His Workers' Compensation Claim, and the ALJ's Initial Decision**

On August 20, 2012, Claimant was injured when he was cutting a board with a saw and a section of a screw came out of the board and struck him in the left eye. That day, Claimant was working as a carpenter on property owned by the Vandalia Area Historical Society ("VAHS"). Claimant was hired by Michael Menech. On July 31, 2014, Claimant filed his workers' compensation claim with the Division of Workers' Compensation.

On May 5, 2016, the parties appeared before an Administrative Law Judge ("ALJ"). The ALJ was tasked with, *inter alia*, determining whether Claimant was employed by VAHS or Menech on the date of his injury. The parties stipulated before the hearing that neither VAHS nor Menech carried workers' compensation insurance. On August 9, 2016, the ALJ issued his initial decision ("initial decision") which determined that, *inter alia*, (1) Menech was Claimant's employer, (2) Claimant had incurred $51,183.42 in past medical expenses due to his work-related injury; and (3) the Second Injury Fund was required to reimburse Claimant for past medical expenses and to pay future medical benefits pursuant to section 287.220.5 RSMo 2000 (effective from August 28, 1998 to December 31, 2013)[1] because Menech was uninsured. The Second Injury Fund timely filed an application for review of the ALJ's initial decision to the Commission. The Second Injury Fund did not challenge the portion of the ALJ's initial decision which determined Menech was Claimant's employer, Menech was uninsured, or that Claimant's injury was work-related.

---

[1] All further references to section 287.220 are to RSMo 2000, which is the version of the statute that was in effect on the date of Claimant's injury. *See Kayden v. Ford Motor Company*, 532 S.W.3d 227, 229 n.1 (Mo. App. W.D. 2017).

**B.      Claimant's Civil Action and Settlement Agreement**

On March 29, 2017, Claimant filed a civil action in the Circuit Court of Audrain County against VAHS and its president for negligence relating to Claimant's August 20, 2012 incident and his resulting injury.  Claimant later amended his petition to add Michael Menech and additional co-employees as defendants.

On September 24, 2018, Claimant executed a settlement agreement which resolved all claims against the defendants in the civil action in exchange for $53,000.  With respect to Claimant's medical bills and liens, the settlement agreement provides:

> [Claimant] understands and agrees that all of his medical bills and/or healthcare provider bills must be paid by him from the settlement amount mentioned above, and there will be no other or further payment of any medical bills by any of the Released Parties for any of [Claimant's] past or future medical treatment for any injuries [Claimant] claimed as damages against Defendants in the Lawsuit or could have claimed arising from the Claim.  [Claimant] agrees to pay any medical liens, Medicare liens, Medicaid liens and/or Workers' Compensation liens, if any, and/or property damage liens filed against the proceeds of any claim released by this Agreement.

On October 1, 2018, Claimant voluntarily dismissed his civil action with prejudice and filed an acknowledgement and receipt of the settlement funds with the trial court.

**C.      The Commission's Temporary Award**

On July 19, 2017, the Commission issued a temporary award allowing compensation ("temporary award") which modified the ALJ's initial decision.  The Commission found the parties did not advance any expert medical opinion or other evidence that would support a finding that Claimant had reached maximum medical improvement from the effects of the August 20, 2012 incident.  Accordingly, the Commission determined Claimant's past medical expenses relating to his resulting injury totaled $23,226.27.  The Commission ordered the Second Injury Fund to pay the $23,226.27 in past medical expenses and to provide Claimant with future medical care necessary to cure and relieve the effects of his injury.

3

In its award, the Commission stated: "This award is only temporary or partial. It is subject to further order, and the proceedings are hereby continued and kept open until a final award can be made. All parties should be aware of the provisions of [section] 287.510 RSMo [2016]."[2] On January 8, 2019, the Second Injury Fund issued payments totaling $23,226.27 to Claimant and his counsel pursuant to the temporary award.[3]

**D.      The Final Hearing before the ALJ and the Commission's Final Award**

On December 9, 2020, the parties appeared for a final hearing before the ALJ on Claimant's workers' compensation claim. The ALJ found that, under the election of remedies doctrine, Claimant was not entitled to workers' compensation benefits from Menech, VAHS, or the Second Injury Fund. Further, the ALJ ordered Claimant to reimburse the Second Injury Fund for the $23,226.27 it paid Claimant and his attorney pursuant to the temporary award.

Claimant filed an application for review to the Commission, and the Commission affirmed the ALJ's decision. The Commission specifically found, "the election of remedies doctrine does apply to [Claimant]'s case, and th[e] [doctrine] barred [Claimant] from recovering the Second Injury Fund funds he received in 2019, due to his 2018 settlement of his civil law suit." The Commission also found Claimant was required to reimburse the Second Injury Fund $23,226.27 under section 287.220.5.

This appeal followed.

---

[2] Section 287.510 RSMo 2016 (effective from August 28, 2005 to the present) dictates that a temporary award of workers' compensation benefits "may be kept open until a final award can be made." All further references to section 287.510 are to RSMo 2016.

[3] We note that a portion of the $23,226.27 was given to Claimant's attorney in a separate check and Claimant himself only retained $17,419.71. For ease of analysis, we will refer to Claimant's payment from the Second Injury Fund pursuant to the temporary award by the total amount which was paid to both Claimant and his attorney.

## II.    DISCUSSION

Claimant raises four points on appeal arguing the Commission erred in denying him various types of workers' compensation benefits.  In his first point on appeal, Claimant argues the Commission erred in, (1) barring him from recovering workers' compensation benefits under the election of remedies doctrine; and (2) ordering him to reimburse the Second Injury Fund $23,226.27.  Because we deny Claimant's first point on appeal and hold, *inter alia*, that the election of remedies doctrine bars Claimant from receiving any workers' compensation benefits, we need not address Claimant's additional points on appeal and will only discuss Claimant's first point in detail.

### A.    Standard of Review

On appeal from the Commission's decision in a workers' compensation case, this Court may only modify, reverse, remand, or set aside the Commission's award if, (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the Commission's award.  Section 287.495.1 RSMo 2016 (effective from August 28, 1998 to the present).  "An award will not be supported by competent and substantial evidence 'in the rare case when it is contrary to the overwhelming weight of the evidence.'"  *Jackson County v. Earnest*, 540 S.W.3d 464, 469 (Mo. App. W.D. 2018) (quoting *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)).

### B.    General Law

"If an employer is not insured and does not qualify as a self-insurer," an employee who is injured in the course of employment "can 'elect' to file a workers' compensation claim or can bring suit [against the employer] in the circuit court."  *Brookman v. Henry Transp*., 886 S.W.2d 213, 215 (Mo. App. E.D. 1994) ("*Brookman I*") (citation omitted).  If the employee chooses to

bring a workers' compensation claim against his uninsured employer, section 287.220.5 dictates the Second Injury Fund may withdraw funds "to cover the fair, reasonable, and necessary expenses to cure and relieve the effects of the injury or disability of an injured employee in the employ of [the] uninsured employer." In such circumstances, the Second Injury Fund has the same defenses to the employee's workers' compensation claim as would the uninsured employer. *Id*.

While an injured employee has the option of filing a workers' compensation claim or a civil suit against his uninsured employer, the employee must ultimately choose which option to pursue to finality. *See Lewis v. Gilmore*, 366 S.W.3d 522, 525 (Mo. banc 2012). "The election of remedies doctrine provides that if there are two or more inconsistent remedies available, the election to pursue the one is a bar to any suit based on the other." *Id*. (internal quotations and citation omitted). The doctrine's purpose is to prevent "double redress for a single wrong." *Id*. After an employee receives something of value on a claim or pursues an action to final judgment, the employee is precluded from pursuing an additional, inconsistent remedy under the election of remedies doctrine. *Brookman I*, 886 S.W.2d at 215. Moreover, a claimant is required to reimburse the Second Injury Fund for any payments he receives from the Fund pursuant to section 287.220.5 if the claimant also receives additional funds "through civil or other action." *See* section 287.220.5 ("[a]ny funds received by the employee . . ., through civil or other action, must go towards reimbursement of the [S]econd [I]njury [F]und, for all payments made to the [claimant] . . . from the [S]econd [I]njury [F]und pursuant to [section 287.220.5]").

## C.     Analysis

We begin by noting that the election of remedies doctrine governs in circumstances where an employee has a choice of pursuing a civil action against his uninsured employer or asserting a workers' compensation claim against the same, uninsured employer. *See Lewis*, 366 S.W.3d at

525. In the instant case, Menech is the uninsured employer. We acknowledge Claimant's civil action included additional parties as co-defendants and his workers' compensation claim included the Second Injury Fund pursuant to 287.220.5. However, because Menech was party to both the workers' compensation claim and the civil action, the election of remedies doctrine governs here. *See id.* Additionally, we acknowledge that regardless of when Claimant elected his remedy, Claimant is required to reimburse the Second Injury Fund the money he received "to cover the fair, reasonable, and necessary expenses to cure and relieve the effects of [his] injury" because he also received money to cover his medical expenses in the civil settlement. *See* section 287.220.5. However, it is still necessary for our Court to determine which remedy Claimant elected – his civil action or his workers' compensation claim – because this decision is relevant to whether Claimant is precluded from receiving additional forms of workers' compensation benefits such as future medical benefits and permanent partial disability benefits. *See Brookman I*, 886 S.W.2d at 214 (after an employee elects his remedy, the employee is precluded from pursuing an additional, inconsistent remedy under the election of remedies doctrine).

### 1. Claimant's Primary Argument on Appeal

In Claimant's primary argument on appeal, Claimant urges our Court to find he elected his remedy on July 19, 2017 when the Commission issued the temporary award of workers' compensation benefits because, in Claimant's opinion, such determination would allow him to retain the $53,000 settlement payment from the civil action and would permit him to collect various types of workers' compensation benefits from the Second Injury Fund and his employer. Claimant's argument that he elected his remedy when the Commission issued the temporary award is predicated on his theory that the temporary award constitutes "something of value." *See id.* at 215.

7

In support of his theory, Claimant cites *Bailey v. McClelland*, 848 S.W.2d 46 (Mo. App. S.D. 1993). Specifically, Claimant represents to this Court that *Bailey* holds an "award in [w]orker's [c]ompensation is deemed to be 'something of value' even if there is no payment made pursuant to that award."[4] Claimant's argument misconstrues the holding in *Bailey*. In *Bailey*, the Court held that the claimant's workers' compensation claim was barred by the election of remedies doctrine because the claimant first pursued a civil action for wrongful death against the employer to final judgment. *Id*. at 46-48. The claimant filed her workers' compensation claim after the civil judgment was entered in her favor but the judgment was unsatisfied. *Id*. at 46-47. Claimant argues that this unsatisfied civil judgment in *Bailey* is analogous to his temporary award in workers' compensation in the instant case and both constitute "something of value." We find this argument unpersuasive because, *inter alia,* the *Bailey* Court did not hold the unsatisfied civil judgment constituted "something of value" for purposes of the election of remedies doctrine; instead, the Court only held the unsatisfied civil judgment was a *final judgment* for purposes of the doctrine. *See id*. at 46-48.

We find our decision in *Brookman v. Henry Transp.*, 924 S.W.2d 286 (Mo. App. E.D. 1996) ("*Brookman II*") to be instructive for our analysis of the election of remedies doctrine as it relates to this case. In *Brookman*, the claimant filed a workers' compensation claim and then, shortly after, brought a civil action against the employer. *Brookman I*, 886 S.W.2d at 214-15. Subsequently, the Commission awarded Claimant a temporary award of workers' compensation benefits. *Brookman II*, 924 S.W.2d at 289. The Commission then issued a final award of

---

[4] Claimant also cites *Lewis v. Gilmore*, 366 S.W.3d 522, 525 (Mo. banc 2012) in his brief on appeal for his proposition that a temporary award of workers' compensation benefits is something of value for purposes of the election of remedies doctrine. *Lewis* does not analyze or discuss whether an award in workers' compensation is something of value. *See id*. Instead, *Lewis* analyzes whether a workers' compensation award against an insured employer bars an employee from asserting a civil action against an additional, uninsured employer. *See id*. at 523-24. Therefore, *Lewis* is not on point and it is unnecessary to distinguish the case in detail.

workers' compensation benefits and the employer appealed, arguing the Commission lacked authority to enter a final award under the election of remedies doctrine. *Id.* Under these circumstances, our Court ruled that there had been no binding election of remedies and the claimant was not barred from receiving the final award of workers' compensation benefits because, (1) the claimant had not received something of value prior to the final award; and (2) there had been no final judgment in the civil case or the claim for workers' compensation. *Id.* In other words, our Court held that a temporary award is neither something of value nor a final judgment for purposes of the election of remedies doctrine. *See id.*

Accordingly, we hold that pursuant to the reasoning in *Brookman II*, the July 19, 2017 issuance of the temporary award did not constitute something of value for purposes of the election of remedies doctrine. *See id.* Similarly, we hold the temporary award was not a final judgment for purposes of the election of remedies doctrine.[5] *See id.* Consequently, Claimant did not elect his remedy when the Commission issued the temporary award on July 19, 2017. *See id.*; *see also Lewis*, 366 S.W.3d at 525.

### 2. The Condensed Timeline and Relevant Timeline of the Events in this Case and Conclusion with Respect to Claimant's Points on Appeal

Having determined Claimant did not elect his remedy when the Commission issued the temporary award, we now look to a condensed and relevant timeline of events in this case to determine when he *did* elect his remedy. The timeline is as follows: (1) on July 31, 2014, Claimant filed his workers' compensation claim in the Division of Workers' Compensation; (2) on August 9, 2016, the ALJ issued his initial decision relating to Claimant's workers' compensation

---

[5] In addition to relying on *Brookman II*, 924 S.W.2d at 289, we also note section 287.510 and the language in the Commission's July 19, 2017 temporary award support our finding that the temporary award is not a final judgment for purposes of the election of remedies doctrine. *See* section 287.510 (providing a temporary award of workers' compensation benefits "may be kept open until a final award can be made"); the Commission's July 19, 2017 temporary award (explicitly noting "[t]his award is only temporary or partial [and] [i]t is subject to further order, and the proceedings are hereby continued and kept open until a final award can be made").

claim; (3) on March 29, 2017, Claimant filed his civil lawsuit; (4) on July 19, 2017, the Commission modified the ALJ's initial decision and issued the temporary award; (5) on September 24, 2018, Claimant executed a settlement agreement with Menech and VAHS which released them of all civil liability; (6) on October 1, 2018, Claimant received $53,000 pursuant to the settlement agreement; and (7) on January 8, 2019, Claimant accepted a total of $23,226.27 from the Second Injury Fund pursuant to the Commission's temporary award.

Accordingly, the timeline of events demonstrates that before Claimant's workers' compensation claim was resolved and before Claimant received payment from the Second Injury Fund (on January 8, 2019), he chose to pursue a civil action against his employer. Most importantly, on October 1, 2018, Claimant elected to accept and receive $53,000, i.e., "something of value," pursuant to the September 24, 2018 settlement agreement. *See Brookman I*, 886 S.W.2d at 215. In exchange, Claimant released all potential claims against Menech, VAHS, and the other parties named in the civil action and voluntarily dismissed his case. Consequently, under the election of remedies doctrine, Claimant was not entitled to the January 8, 2019 payment from the Second Injury Fund which was issued pursuant to the temporary award and is precluded from receiving additional workers' compensation benefits. *See Lewis*, 366 S.W.3d at 525; *c.f. Brookman II*, 924 S.W.2d at 289 (holding the Commission had authority to enter a final award of workers' compensation benefits after first issuing a temporary award because the claimant had not yet received something of value and there had been no final judgment). To allow Claimant to receive both settlement money and workers' compensation benefits would frustrate the purpose of the election of remedies doctrine and allow for double redress. *See id*.

In conclusion, Claimant elected his remedy on October 1, 2018 when he accepted the $53,000 settlement payment relating to his civil action against, *inter alia*, Menech and VAHS. Accordingly, the Commission did not err in finding Claimant is not entitled to workers'

compensation benefits from Menech, VAHS, or the Second Injury Fund.[6] *See id.*; *see also* section 287.220.5. Similarly, because section 287.220.5 dictates that any funds that a claimant receives through civil or other action must go towards reimbursement of the Second Injury Fund, the Commission did not err in ordering Claimant to reimburse the Second Injury Fund $23,226.27. *See id.*

Based on the foregoing, Claimant's points on appeal are denied.

### III. CONCLUSION

The Commission's decision denying Claimant workers' compensation benefits and ordering him to reimburse the Second Injury Fund $23,226.27 is affirmed.

_____
ROBERT M. CLAYTON III, Judge

Angela T. Quigless, P.J., and
Sherri B. Sullivan, J., concur.

---

[6] We acknowledge that had the Second Injury Fund acted pursuant to the temporary award in a prompt manner instead of waiting nearly eighteen months to issue payment, the outcome of this case would be vastly different. However, the fact remains that the Second Injury Fund "shall have the same defenses to [workers' compensation claims] as would the uninsured employer," which includes a defense invoking the election of remedies doctrine. *See* section 287.220.5. We also note the general principle of law that an employee of an uninsured employer should not receive a windfall from the Second Injury Fund on account of his employer's failure to carry insurance, as is required under the law. *See Mann v. Varney Const.*, 23 S.W.3d 231, 233-34 (Mo. App. E.D. 2000) (interpreting the scope of the Second Injury Fund's liability under section 287.220.5).